This is our second case of the morning. People of the state of Illinois versus Cortez Murphy for the appellate, Mr. Ryan, for the appellee, Ms. Shepard. You may proceed. Thank you, Your Honor. May it please the court, counsel, I'm Martin Ryan from the Office of the State Appellate Defender for the defendant, Cortez Murphy. Short note, in case you were wondering about me being here, Gary Peterson wrote the briefs. Gary retired. After a long and illustrious career, over 30 years at OSAD, I inherited this case from him for moral argument. Today I intend to concentrate on argument one, which I think is really the main argument in this case and stand on the brief as to the others. I think the facts in this case are largely undisputed. Two homes were burglarized. An Xbox and things related to the Xbox were stolen from one and a camera stolen from the other. Mr. Murphy, at some point subsequent to the burglaries, bought the stolen Xbox and the camera on the street, believing them to be stolen or at least having a good idea that they were. Two days after the underlying burglaries, the houses, Mr. Murphy pawned these two items at a particular pawn shop. The Xbox was I think for $90 and the camera was for $35. Interestingly though, the state charged Mr. Murphy with burglaries of the pawn shop. The state's theory in this case was that the act of pawning the items provided the final element of the underlying theft, because it was burglary predicated on intent to commit theft, and completed the theft inside the pawn shop. The state argued that the act of pawning the items was the second half of the theft and argued that he knowingly used the property of the items, stolen items in such a manner as to deprive the owner permanently of the use or benefit. The instructions tendered, the state's definition of theft instruction was used. The defendant was going for a lesser included offense at trial and tendered a theft instruction, but the state objected to the last part of the fourth element. So actually, for purposes of this case, the last element about using the items in such a manner as to deprive the owners permanently of the use or benefit of the property was pretty much at the state's behest. I can hear the last part. I'm sorry, it was at the state's behest. Sorry, I'll try to speak up. At any rate, for a reasonable doubt issue, this case turns on whether Mr. Murphy's possession of the stolen property was an ongoing offense or whether it was complete before he entered that pawn shop. If it's an ongoing offense, do you lose? Yes, I think it is. And your position is it's not an ongoing offense? Yes. Based on the Walton case? Based on, yeah, well, there's two parts to it. There's the part more argued more thoroughly in the brief about the reading of the statute. And in the current version of the statute, there's basically five varieties of burglary, and then A, B, and C. Five varieties of theft. Sorry, sorry. And then there's A, B, and C. Yes, I misspoke. Five varieties of theft. Mr. Peterson wrote in his brief, I was a little surprised to see it, that apparently he says the statutory definition of theft by taking control of stolen property, subsequent use is not an element. Apparently his belief is that, page 11 of his brief, that the statute simply provides a person to commit theft when he knowingly obtains control of stolen property, knowing the property had been stolen under such circumstances would reasonably induce him for her to believe the property was stolen, period. Is that your position? That is part one of the position. Okay. I'm not withdrawing from that position. Well, the reason I asked that, Mr. Martin, is Mr. Ryan, excuse me, is I'm a little shocked by this argument, because this is 45 years now that I've been involved with criminal code. As I look to section 16-1, you're right that there are five numbers under A, A1 through 5, all joins statutorily with the alternative, the word or. First commit separately, knowingly, he or she knowingly 1 or 2 or 3 or 4 or 5 and A or B or C. Now I've understood this for, this is the 5th decade now, which commit theft by doing 1A or 3B or 4C or any other combination thereof. But you have to have 1 of the first 5, then legislation puts in there the word and for A, B or C. Am I in error in that assessment? As it's written, I think you are. So, in other words, for 16-1A4, which is apparently an issue here, a person commits theft when he or she knowingly obtains control of a stolen property, knowing the property has been stolen under such circumstances would reasonably induce him or her to believe the property was stolen, period. The and, which appears at the end of number 5 and contains A, B and C doesn't apply. That's what Mr. Peterson wrote and that's what you're saying? That is the first part of the argument, yes. Is that your construction of the theft statute that A, B and C do not apply? I think if you read it literally. I think that calls for a yes or no. Is your construction of the theft statute that under 16-1A4 that paragraphs A, B and C, none of them apply? The and that precedes those three lettered paragraphs do not apply to A4, which obtains control of a stolen property? Yes. And if you look at Zaremba, or actually, for the first thing, look at the statute itself. The statute you just read to me and I've got a copy here in front of me. Why, if A, B and C, we have these five varieties, and until you get to five, the first four, I think, all have a culpable mental state, all on their own. One has unauthorized. Two requires deception. Three requires a threat. Four requires that it actually has to be stolen and you know that it's stolen. Also, there's a knowingly at the top. The fifth, which was held in Zaremba to be unconstitutional, just says a police officer told you it was stolen. It doesn't have to be stolen. You know, and again. But as a matter of statutory construction, that word and that appears after number five, what does that mean? That applies to five. That A, B and C goes with five. So, does a person commit theft, for instance, under 16-A1, or he obtains or exerts an authorized control of a property owner, period? I'm sorry. Could you say that more slowly? Looking at 16-1A. Yes. Does a person commit theft when he or she knowingly, one, obtains or exerts control over property of the owner, period? Or do you also need, in conjunction therewith, one of the paragraphs A, B or C? I think one through four are freestanding and don't need A, B and C. And the way it's written, again, every time you took a joyride, it would be a burglary.  Or a theft. Or a theft. Or a theft, rather. You're exerting an unauthorized control over the property. That's the crime of theft? I see what you mean. You can borrow the car or you take the car from the neighbor's driveway. Can that be right? So this is five decades' worth of my mistaken judgment on what the theft statute means? I see that I am not gaining any traction here. So I have something else. I'm shocked that Mr. Peterson wrote this. And he cites the IPI, which of course includes the paragraphs A, B and C on page 11 of your brief and says it's wrong. You know, I don't understand this. If I pinpocket you or distract you to pick up your briefcase and wait until the end of the oral and give it back to you, I've done two. I've used deception to contain control over it, but I'm not going to permanently deprive you of it. No, in that case you wouldn't like it. No. So for paragraph 16-1A1, apparently A, B and C are required. One of those. Would that be correct? Well, the answer should be for purposes of this argument, I'm willing to concede that so that I can go on. Yeah, I know what you mean. But the end, of course, appears at the end of paragraph five. It doesn't appear at the end of any of the preceding paragraphs. And it's also A, B and C, which implies the way it's written that those are subsections of five. Because it doesn't say a person commits death when he or she knowingly does one of these five things and also commits one of these three things. Well, so your... That's how it's been read. Is the end... I want to make sure I understand your argument. Are you arguing that the end of clause five with the A, B and C only applies to clause five? That is the argument. And if we disagree with that, do you lose this case? No. Oh. That's the second part. And I'll take it as read that you guys... Well, let me ask you this question also. Because this also gets down to what we're talking about in this whole offense. It might be... We often see arguments that the defendant committed some crime but not the crime charged. The state made a mistake. Maybe the... So that's essentially what the argument is here. The state made a mistake by charging... What's this guy's name? Cortez Murphy. Cortez Murphy with burglary. He committed some other crime. Using that as an example. Your argument is he didn't commit a burglary when he walked into the Pawn King with the stolen property and pawned it. Did he commit any crime by doing that? Under this case... Well, actually, the problem is that was not... Well, that's my question. I want you to focus on going to the Pawn King with the stolen property that he conceded... Maybe it was stolen. He bought it from a guy in the street. So we don't... We can't say... And it's two days later. The old idea that the inference of recently stolen merchandise is enough for a residential burglary. That may not apply here. But my question is... Focusing on his going into the Pawn King with this Xbox and this other stuff. And his pawning. Did he commit any crime? Not as charged here. That's not my question. I didn't ask you as charged here. As a zealous advocate... Become the prosecutor for the moment. And as a lawyer... Did he commit any crime by what he did? It is possible that had it been properly charged that that could be a crime. Which one? What crime did he commit? Hold on. This backs me up to the Walton case. We'll get to it, I promise. Crime... He does commit a theft by buying this thing on the street. If the police had found him on a tip the next day before he ever walks into the pawn shop... He doesn't have a defense to theft by saying... Well, I didn't go pawn it. I didn't give it to anybody. I didn't use it in a way to permanently deprive the owner. That wouldn't be a defense. He's guilty of a theft. The theft's complete before he walked into the pawn shop. So part two... I suppose it's possible that had that been independently charged... What? Give me the antecedent for that. The separate act of selling the item in the pawn shop. That would be theft, wouldn't it? If he'd been charged with it. Well, my question is... I'm not going to concede my client's guilt... Tell me what crime he committed. Tell me what crime you think, even technically, he could have been charged with committing... Given your argument before us in this case... About how receiving stolen property is not a continuing crime. What crime, if any, could he have been charged with... By going into the pawn shop and doing what he did? It's possible that he may have been charged with theft. But I haven't briefed the issue. How about burglary? Sorry? How about burglary with Pawn King being the victim... Instead of the victims being Lindsay Constant and Ashley Bittman? Well, yeah, that would follow. If he could be charged with theft inside the pawn shop... He could be charged with burglary, assuming he intended to commit the theft. But the burglary charge here didn't identify who the victim of the theft was. That's correct. All it says is he had the intent to commit a theft. Right, but the instructions that were fully participated in by both the state and the defense... Went with A4, stolen property. They're very clearly those elements. That's the crime of theft. Yes, but it's the underlying theft on the street. The prosecutor says that there's the second half of the theft. He's using the act in the pawn shop as if it revived the prior theft. So the jury is being told he's guilty because he walked into a pawn shop with goods he knew were stolen... And now the underlying theft is revived. The Walton case that you relied so heavily on in your brief involved none of this discussion at all. It contained only a question of joinder, whether that was appropriate. And in a two-to-one decision, the third district said, you know, this is not a continuing possession offense. To which the dissenter said, I don't understand that. And I note that the majority in saying that cited in the... Let me see, it was 1961 that the criminal code was codified and 16-1 was codified. Cites no case and presents no analysis of any kind as to why this is not a continuing offense. Oh, actually, I believe that Walton actually does have some analysis on that... Because it talks about the difference... Between attains or attains and exerts? Yes, because if you look at the definition... For the previous five decades, no court in the state of Illinois had picked up on it? Your Honor, do you think that my client... To answer your question with a question... Do you think he would have had a defense to theft if he'd been caught on the street before he walks into the pawn game? Do you think he needs a further act? Well, he needs a... Or has he brought about a transfer? Well, if he's used or concealed or if he's knowingly concealed the property in such manners to deprive the owner... Like hiding it in his house. But of course, you see, I didn't write the statute. The legislature made it clear, and Mr. Peterson couldn't be more wrong... That A, B, and C, one of those alternatives applies to all numbers 1 through 5. Your Honor, in the Walton case, and I will concede this... The Walton case assumed that A, B, and C applied to subsection 4. Because if you look at Walton, it says A4A, A4B, or whatever... But somehow Walton says you take control of a stolen property under A4 and then the crime of theft is over. Well, it's not over, is it? Yeah, because again, A4 obtains control. And obtain, in subsection 15-7, is in relation to property to bring about a transfer of interest or possession. The act is that transfer. It's done. He doesn't need to bury it in his backyard. He doesn't need to bring it to a pawn shop. He's completed that. Well, if the cops find it in his house... As long as he intends to permanently deprive the owner of his backyard. What if the cops find it in his house a week later? Has he committed the crime then? Could he be charged with it then? Well, he still has the... Yes, because a week is not outside the statute of limitations. He still has committed the theft. But it turns out he had it for two weeks earlier. If it's not a continuing crime, when did it stop being a crime? It's the transfer. The transfer with the requisite intent. Just the way a burglary itself is complete, the second you walk in the door with the intent, even if you don't actually do anything criminal inside... So assuming he got this property, he had the property in July 16, before he went to pawn it, and he decided, I'm not going to pawn it today, I'm going to pawn it a month from now. And they find him a month later. Has he still committed the offensive theft? Well, yes. Okay, here's... At what point is he no longer committing the offensive theft? Apparently only when he walked into Pawn King? It's not an ongoing, continuous... I think there's a difference between... Can you be charged with an offense that's already over? Which, of course, the answer is yes, unless you're outside the statute of limitations, and whether the offense is literally still going on. He, of course, can be charged with the theft, because he's already completed it. My point is the actus reus of theft, even with adding subsection A, B, or C, which are basically substitute mental states on permanent deprivation, you could infer that somebody buying something out in the street, as intent is often inferred, doesn't intend to return it to its rightful owner. Intends to keep it for him or herself, or do something else with it. So you can be charged. For sure, you've committed the crime, but the actual crime itself is already in progress. Well, in dissent, and Walton, just as right, writes, the statute allows the state to deter criminal misconduct for prosecuting the possession of stolen property after the initial theft, with the charge based on section 16-1A4A, even when the state's investigation does not uncover the identity of the thief who initially obtained the merchandise from the store. Is she wrong? Wait. That's the dissent in Walton. No, I think so. I think the majority opinion in Walton is right, in as far as A4, the actus reus is the transfer. It says obtains. Obtains is defined by statute. Whether or not subsection 8 applies as applying a mental state, the only act required is the actually obtaining or the transfer. That's done on the street in this case. That's done beforehand. She respectfully disagreed with the majority statement that A4 prescribes only the initial act by which a defendant first gains control of the property. But this isn't A4. This was a joint case. It was a two-to-one decision by the third district, and in writing that it prescribes only the initial act, the majority sided no support for the statute. It's now almost 50 years old. Should we draw any inference from that? May I respond? Go ahead. The majority opinion sided the statute, so I would disagree that that's no authority. I also think it's a sensible distinction. This is the first interpretation of the statute. We cited this case for the proposition that it's not an ongoing offense under A4. I understand that it's a charging instrument case, and this is a reasonable doubt argument. It was not a charging instrument. It was a jointer case. Right. It wasn't even, is the charge appropriate? Actually, I disagree, Your Honor. The underlying defense argument was that under Rowell, the charge, which apparently this person had a whole bunch of apparently stolen items in the trunk of her car, and it was whether you could aggregate the value to make the felony, and the defendant raised the argument for the first time on appeal that under Rowell, the state failed to charge single intention and design, and so the court was dealing with the fallout from that error, and so they reached the legal conclusion, well, the majority did, reached the legal conclusion that A4 ends when the transfer occurs. For purposes of jointer. Which was the only issue before. Yeah, but it's still legal construction. I don't see any difference. I don't see any, that's a six-point difference, in my opinion. Thank you, Your Honor. Case is closed. As Your Honors have pointed out in the preceding discussion, the theft statute is clear and all of the authority that has interpreted the theft statute before and since Zaremba is clear that theft includes the, what we've called in our brief, the conduct element, one of those that are described in sections one through five, section 16A, and also one of the intent, or one of the permanent deprivation elements described in subsections A through C. Let's suppose for a moment that the police found the person who sold the defendant the property, and that person said, maybe because they cut a deal, they end up testifying, and said, Mr. Murphy told me he intended to pawn the property, and they catch Murphy before he gets to the pawn shop. Has he committed a theft? He, can I tell, yeah, well, sure we've burgled this stuff, or he snickers when Murphy buys it, and as he's buying it, I can pawn this. You know I can pawn this for more than I'm giving you, and the other moat, who may be the burglar, says, yeah, so what? I don't want to go into a pawn shop. I don't want to do any of that. Is the theft complete when he expresses the intent? Or is he guilty of theft then, and he's also guilty of burglary when he goes and sells it? I mean he's expressed the intent under one to permanently deprive. It's the second option, Justice Knapp. It's the fact that whatever intent he may have had, if he had formed the intent to pawn the property before he entered Pawn King, the issue is not when the theft is complete. The issue is what did the defendant in this case do? And he clearly, when he entered Pawn King, intended to pawn the property. He did pawn the property. But if evidence shows that he intended to do that before he enters Pawn King, he can be charged and convicted of theft. He can be, but he is not required to be charged with theft, because clearly, he took that extra step. He entered the Pawn King with the intent to commit therein a theft by pawning it. And the prosecutor, the state, is not required to give him a pass on that. He thereby, when he went in and pawned the property, and when he entered with the intent to do that, he clearly did use the property in such manner as to deprive the owner permanently of such use or benefit. Ms. Shepard, I asked Mr. Ryan a question, and I want to ask you the same one. If the defendant's position is correct in this case, then putting on your prosecutor's hat, which you are at the state level but at the trial level, what crime did he commit by pawning the property at the Pawn King? He committed theft. Well, if their position is that it's not a continuing matter, that, as you know from their brief, they're claiming that he was over as soon as he had the property, somehow, that A4 was over and done as they briefed. Is there any crime, then, that he committed after anything else that you can imagine that he committed by doing what he did with the property in the Pawn King? Well, of course, the state would disagree that theft is not a continuing crime. Well, I understand, but I just, I don't think Mr. Ryan answered that question as he thought that there was something out there, but I didn't, and I'm not sure what there is. I wanted to see if he would know of any other crime, somehow, that he would have committed. I'm not thinking of one off the top of my head, and that's not really respectfully what the issue would be, of course, because the process... Why wouldn't there be a burglary where the pawn shop was the victim? Sell it to the pawn shop. You know that perhaps you're going to get tracked down, they're going to follow the goods, and the pawn shop's actually going to be out the money they give for those goods, because those goods are going to go back to the victims, in this case, constant and bitten. Therefore, if the state had charged it appropriately, you would have a burglary in that the victim, the person who lost the goods, was the pawn shop. That's not the way the state proceeded with this. So there was a burglary, they just proceeded with the wrong burglary. Why wouldn't that be the case? The theft is from the pawn shop. The pawn shop is going to lose the goods, because they rightfully belong to the two persons whose homes were burglarized. Therefore, he entered the pawn shop with the intent to commit a theft against the owner of the pawn shop. That would be the burglary. Unfortunately, that is not the way the state proceeded with this case. The state proceeded by charging burglary by the defendant entering the pawn shop with the intent to commit their own theft. Are you suggesting that the state could charge this on a minute-by-minute basis? There's the original theft. Five minutes later, there's another theft, because he hasn't given up the property yet. Five minutes later, there's another theft. The next day, there's another one. 30 days down the road, there's another one. I mean, it's endless. How could there be that many thefts involved when there's really only one taken, and that's when he makes the purchase on the street? Because there are two elements involved in theft, and one of them can be, clearly under the statute, use of the property, which, when he goes into the pawn king, he... I have some experience just like Justice Steinem does in these matters, and it's not common for a defendant to charge with theft and say, yeah, I intended to permanently deprive. Once you've taken property that you know is stolen, the state has the right to charge that, does charge that, and wins because the only reasonable inference is you would take the property with the intent to permanently deprive the true owner thereof. That the defendant is guilty of theft under those circumstances does not prevent the state from then charging him with burglary once he goes in and uses the property to permanently deprive the theft was towards the pawn shop, not towards the two persons whose homes were burglarized. You're trying to use that theft to prove the burglary in the pawn shop. Do you see what I'm saying, counsel? Uh, I,  use to, so to deprive the owner permanently of such use for benefit. Why can't that be the owner that he originally charged with burglary with? The property that the property was originally obtained from. It's stolen property. Because the theft owner incurred. He knows that it's stolen. How many times can you steal the same property? He was only, well it might be a problem if the state had attempted to charge multiple thefts. Why? Instead, he took this additional step. Maybe they didn't have the proof to establish the prior theft. So if he went to three pawn shops with three items it would be three burglaries? It could be. It could be. Those are three separate acts. The, uh, charge in this case just alleged committing the offense of burglary by entering the pawn shop, entering the building of Pawn King, rather, didn't, didn't allege who the victims were of the theft, did it? Right. And it didn't define the type of theft. So it just said with the intent to commit a theft, which is the standard burglary charge. Right. So how about the state's closing argument? Wasn't it very clear who they were asserting were the victims of the theft? I've read them. Okay, well, I remember what the defense council agreed the instructions would be. I frankly can't remember. I assume that the state's attorney's closing argument dovetailed with that. It can be, it is a theft under the statute, and Walton, if I can talk about Walton right now. That's fine with me. I mean, if we're going to talk about whether or not it's a continuing offense, another way of looking at Walton, of course, we argued in, anyway, Walton was wrongly decided. But another way of looking at Walton is, Walton does not say that there's only one element to theft by obtaining control over stolen property. It does not say that that's the only initial obtaining control. There was a permanent deprivation element charged in Walton, and that was  permanently deprive. Now that, of course, does not require a separate act. We don't have that here. We have a separate act. But it went into the bond game, he pawned the property, that was a separate act. All of Walton's language has to do with that section, the first obtaining control section. You're suggesting that there was no theft until the items were pawned. That surely is not the state's position here. I'm not suggesting that there was no theft. I'm suggesting that... Well, there can't be another theft of the same property can't there? If it's a continuing theft, and also if... That's why it can't be a continuing theft, and thus you're saying the state can just charge multiple counts. That's another issue in that here clearly, by pawning the property, he did use the property so as to deprive the owner of its user property. Okay? And he also obtained the stolen property. Those are the two elements that were issued, and that constitutes theft. To me, what you're suggesting is had there not been a pawning of this property, the state could not have proceeded successfully on a theft charge. No, we're not suggesting that. We're not suggesting that. We are suggesting, and it's clear that the prosecutor, we would suggest, that it's clear that the state can charge, can hold defendants accountable for going to that pawn king and pawning the property. He may have committed the theft before, but he did not get charged with that. The state was not required to charge him. He admitted to a police officer that he bought stolen property and he knew it was stolen. The state doesn't have enough there to charge him. He bought it knowing it was stolen, but he really wasn't going to deprive the true owner permanently thereof. I mean, honestly, I know you're doing the best you can with what you've been given from the prosecutor's office, but the fact is it was just charged wrong. It was charged correctly. Judge Steinman is correct. It was not argued that way, however, to the jury, and he was convicted for more than one theft from the persons whose homes were burglarized. It should have been proceeded upon by the state with the victim of that being the pawn shop, because that would have been a burglary. That's not the way the state proceeded on this case, however. You look  case,    the state proceeded on this case. So the state was charged with burglary by intent to commit the theft. It was not defined. To succeed in that fashion, you have to say that this property was stolen more than once. It was stolen when he bought it on the street and he stole it again when he pawned it at the pawn shop. I just don't understand what the state's theory is in going about the prosecution in this  I don't know how many accounts the state could charge whether it be on a daily basis or an hourly basis until the property is returned or something else happens. We don't have that situation in this case. So  don't           case. I don't know what the state's theory is in going about the prosecution in this case. It seems apparent from reading the record here that the state didn't feel like they had enough to go with the residential burglary instead of just settling with a theft charge when they tried to make it into a burglary since they couldn't make the residential burglary. That may be true, but I would suggest it's really not relevant here because the statute says that sometimes... Well, if you're trying to make a theft into a burglary instead of proceeding on a theft, I think it is relevant. If the statute, if the offense and the facts fit the statutory definition of theft, then it's guilty of theft. They do here. There's no dispute as to the facts as to what the defendant did. And the fact that he went in... It met that definition upon the purchase of the property on the street. Well, the fact that at that time, maybe he intended to permanently deprive... I mean, one of those A, B, or C elements is required. Maybe he did. I have no dispute with that. I completely disagree with the defense theory that the intent to permanently deprive doesn't apply. The problem is the state doesn't, I think, want to be put in a position where some subsequent act like selling to a pawn shop is needed to charge a theft. It's not needed. It's not needed. Perhaps they could have just gone forward on the theft. But when the defendant then goes into the whole case and pawns the property, that is use of the property under Section B. So why can't they charge? If a jury would not make an inference that the theft had nothing        that the theft had nothing to do with the theft? And that's the additional proof that the state is saying it needs that the pawning at the pawn shop proved the intent to permanently deprive. There are three different permanent      the state has said that the intent to permanently deprive the property is not the intent to permanently deprive the  The fact that Walton included or concerned the intent to permanently deprive, which doesn't require a separate action, and the fact that Walton did or that maybe our defendants had intended to deprive the property doesn't hold to the contrary. It's a joinder case. It didn't even address the second element of that. It was talking about the language the defendant relies on has to do with the obtaining control portion. That was the only portion that the timing of the defendant and Walton's acquisition of 54 things that were found in her trunk was pertinent to. So the theft statute reads as it reads. The defendant clearly violated it when he went in and pawned the property. He clearly intended to commit a theft when he went in  pawned the property. There's no authority that would hold that this was improper. We would simply ask that you confirm. Is there a moment? Just briefly. I agree with everything Justice Turner said that the theft was complete. Really the only thing I wanted to respond to was the idea that somehow these misshapen theft instructions were all the defendant's fault. The charge did not specify a subsection of theft. It didn't specify victims either. No. But the state drafted the definition of theft when the defense came. The state had to instruct on theft anyway. The state had to tender theft instructions anyway. It was only that the jury had a lesser included option. The state objected to the language of the theft instruction because it wanted to change the last part of it. I think they had already conferred before that to name the underlying rightful owners as victims. Let me ask you a hypothetical to help me understand your argument about how the offense has been completed on the facts of this case changing them a little bit. One of the victims is Ashley Benton. Her camera was stolen from her house in June of 2012. Let's change this so that it was June of 2008 that a diamond brooch was stolen from her house. It was a very valuable thing, important, family heirloom. It was taken and the burglar fenced it to Mr. Murphy   says, you know, Murphy on further investigation says, yeah, I bought it on the street, this diamond brooch, and I bought it two days after it was stolen in 2008, and at that point he hid it in his home waiting for a time for it to be  Okay? Four years later, statute of limitations on theft being three years, four years later the police found the diamond brooch and have occasion to search his home and find the brooch and they want to charge him on that date with the brooch and receiving stolen property under A4. Can they do it? Has the statute of limitations run? I assume my recollection is the statute of limitations is three years  he committed the offense Then they can charge him. Then they can charge him. But in your position it's not a continuing offense. Because he committed the offense four years earlier when he brought it from the burglar and he hid it so we have it  years. He concealed the property and such concealment will probably deprive the owner of use or benefit. It's been concealed for these four years. The offense of theft, he could have been charged four years earlier. Couldn't he? As soon as he gets it. Generally when you know you're buying stolen goods without extraneous facts. He knew it was he suspected he admits to the police. I pretty much knew four years ago when I bought this. I hid it in my house. Has the statute of limitations run because the crime was committed four years ago? Or can the police? It has. The offense has stopped. I want to make sure I understand. Last week when the cop searched his house and found the brooch, he can't be charged with it because the statute of limitations is now run. That's correct. If we agree with your argument that would have to be the result. I just want to make sure I understood. There is a statute of limitations on theft. Three years? Under that hypothetical if you were disposed, wouldn't this court be saying we reject that there is a statute of limitations on theft? There simply would not be one. It could happen 50 years later and it wouldn't make any difference. Right. Why is that? Because again theft is the act. As long as you have an item of stolen property it means there is no statute of limitations. Can they charge him then? I don't think so. I think it's the transfer of the property. It's the only act at the time. Thank you counsel. I take the matter under advisement. Await the readiness of our next case.